A97A0226. GEORGIA PUBLIC SERVICE COMMISSION v. CSX
TRANSPORTATION, INC.
(484 SE2d 799)

Judge Harold R. Banke.

The Georgia Public Service Commission ("the Commission") appeals an order of the Fulton County Superior Court holding that the ICC Termination Act of 1995 preempted the Commission's efforts to impose economic regulations on CSX Transportation, Inc. ("CSX"). The Commission enumerates five errors.

This case arose after CSX sought the Commission's permission to modify the staffing at CSX's service facility at Cordele, Georgia, by reducing the employees from two to one and consolidating some of the services with those provided at the CSX customer service facility in Jacksonville, Florida. CSX estimated that eliminating the position would save it as much as $50,000 annually. After a hearing, the Commission denied CSX's application. CSX unsuccessfully petitioned for reconsideration, arguing that the ICC Termination Act of 1995 preempted the Commission's decision.[1]

CSX then filed its successful appeal in Fulton County Superior Court. The court based its decision in part on findings that (1) the ICC Termination Act preempted the Commission's decision; (2) the Commission acted beyond the purview of its own rules which cover only discontinuation and abandonment of agency offices rather than modifications in staffing; and (3) the decision was not supported by the evidence. *Held*:

1. We reject the Commission's contention that the Fulton County Superior Court lacked jurisdiction over this controversy. It appears, as the Commission argues, that Section 9 of Ga. L. 1975, p. 404 exempted the proceedings before the Commission from the judicial review provisions of the Administrative Procedure Act, OCGA § 50-13-19. OCGA § 1-1-10 (c) (41). Nor would that Act's declaratory judgment procedures apply to these facts because CSX's allegations do not challenge the Commission's "rules" within the meaning of OCGA § 50-13-10. See *Roy E. Davis & Co. v. Dept. of Revenue*, 256 Ga. 709, 711 (353 SE2d 195) (1987). As a result, CSX was effectively deprived

---

[1] The ICC Termination Act had not yet become effective when CSX initially petitioned the Commission. By the time the Act became effective on January 1, 1996, the proceedings before the Commission were well underway.

of any relief through administrative remedies. See *Moss v. Central State Hosp.*, 255 Ga. 403, 404 (339 SE2d 226) (1986).

The superior court was, however, presented with a controversy amenable to resolution under OCGA § 9-4-2. That section, the Declaratory Judgment Act, authorizes superior courts to "declare rights and other legal relations of any interested party petitioning for such declaration." OCGA § 9-4-2 (a). The Act, which must be liberally construed and administered to afford such relief, is available where some fact or circumstance necessitates "a determination of disputes, not merely for the purpose of enforcing accrued rights, but in order to guide and protect the petitioner from uncertainty and insecurity with respect to the propriety of some future act or conduct which is properly incident to his alleged rights, and which future action without such direction might reasonably jeopardize his interest." *Cohen v. Reisman*, 203 Ga. 684 (1) (48 SE2d 113) (1948); OCGA § 9-4-1.

Here, the propriety of declaratory relief is apparent. The facts alleged demonstrate the necessity of judicial intervention to protect CSX's right to control the Cordele facility, a right denied by the Commission. *Pangle v. Gossett*, 261 Ga. 307, 308 (1) (404 SE2d 561) (1991) (declaratory judgment justified when one party claims right and the other denies it). In addition, CSX faces uncertainty and insecurity with regard to its future relationship with the Commission in general, involving conduct which might otherwise jeopardize its interests. Compare *Henderson v. Alverson*, 217 Ga. 541, 542 (123 SE2d 721) (1962); see Davis and Shulman, Ga. Prac. & Proc. (6th ed.) § 26-1, p. 721. Moreover, the case was susceptible to complete termination by the superior court's declaration of rights. OCGA § 9-4-8; see *Consolidated Quarries Corp. v. Davidson*, 79 Ga. App. 248, 249-250 (53 SE2d 231) (1949) (no declaratory relief where controversy cannot be completely resolved). Under these circumstances, the "ends of justice" were served by the superior court's decision to provide declaratory relief by reaching the preemption issue. OCGA § 9-4-2 (b); see *Sunn v. Mercury Marine*, 166 Ga. App. 567, 569 (1) (305 SE2d 6) (1983) (pleadings, judged by their function rather than their label, must be construed to serve the best interests of the pleader).

2. The superior court correctly determined that the ICC Termination Act of 1995 preempted the Commission's decision. "[The] [p]reemption doctrine is rooted in the Supremacy Clause and grows from the premise that when state law conflicts or interferes with federal law, state law must give way." *Teper v. Miller*, 82 F3d 989, 993 (11th Cir. 1996). Congress may express a "clear and manifest" intent for federal law to have preemptive effect in three ways: (1) by expressly defining the extent of preemption; (2) by regulating an area so pervasively that an intent to preempt the entire field may be inferred; and (3) by enacting a law that directly conflicts with state

law. Id.

Congress' efforts to deregulate railroads, in part by wresting their control from the states, culminated in the ICC Termination Act. Pub. L. No. 104-88, 1995 USCCAN (104 Stat.) 802-803. The Act specifically states that the Surface Transportation Board's jurisdiction over: "(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive." 49 USC § 10501 (b); see 49 USC § 701 (establishing the Board, which replaces the Interstate Commerce Commission).

This express delineation of the breadth of the law's preemptive reach is "clear and manifest." *Teper*, 82 F3d at 993. The Act defines "transportation" to include "facilities" and "services" related to the movement of passengers or property or both, by rail including the "storage, handling, and interchange of passengers and property." 49 USC § 10102 (9). These definitions are sufficiently broad to reach the facts of this case notwithstanding the Commission's argument that the service center at issue is an "agency" rather than a "facility."

Moreover, the Commission's decision is just the sort of anticompetitive micromanagement that the ICC Termination Act was enacted to avert. See Pub. L. No. 104-88, 1995 USCCAN (104 Stat.) 802; see 49 USC § 10101. Congress, without question, has the authority to preempt activity which collides with its overriding "scheme of economic regulation (and deregulation) of railroads." Pub. L. No. 104-88, 1995 USCCAN (104 Stat.) 852; *Teper*, 82 F3d at 993. Therefore, we affirm the superior court's decision on preemption insofar as it reaches the parties to this action.

3. In light of this holding, we need not reach the remaining enumerations.

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED MARCH 28, 1997.

*Michael J. Bowers, Attorney General, Brenda H. Cole, Deputy Attorney General, Alan Gantzhorn, Senior Assistant Attorney General, Thomas K. Bond, Assistant Attorney General*, for appellant.

*Nelson, Mullins, Riley & Scarborough, Taylor T. Daly, Phil C. Beverly*, for appellee.