A04A0284, A04A0285. WET WALLS, INC. et al. v. LEDEZMA; and vice versa.
(598 SE2d 60)

RUFFIN, Presiding Judge.

The State Board of Workers' Compensation issued an award ordering Wet Walls, Inc. and Traveler's Property Casualty (collectively, the "employer") to recommence paying temporary total disability (TTD) benefits to Saul Ledezma. The superior court affirmed the award. In Case No. A04A0284, the employer contends that the State Board erred in requiring it to pay TTD benefits to Ledezma, who has been deported from this country. In Case No. A04A0285, Ledezma asserts that the State Board erred in denying his claim for lump sum payment of permanent partial disability (PPD) benefits. For reasons that follow, we affirm.

*Case No. A04A0284*

The relevant facts show that in 1989, while working for Wet Walls, Inc., Saul Ledezma fractured his back and became partially paralyzed. In 1991, Ledezma's doctor concluded that Ledezma had reached maximum medical improvement and gave him a permanent partial disability rating of 65.5 percent. When Ledezma returned to his doctor in 2002, the doctor indicated that Ledezma was unable to return to his previous employment as a manual laborer, and he recommended that Ledezma undergo "a full vocational evaluation to assess his avocation."

Following Ledezma's injury, the employer began paying him TTD benefits. However, when Ledezma was subsequently incarcerated, the employer suspended benefits. When Ledezma was ultimately released from custody, he was deported from the United States. As part of Ledezma's parole, he is banned from returning to this country.

Notwithstanding his deportation, Ledezma filed a claim for

resumption of TTD benefits and payment of PPD benefits.[1] The administrative law judge (ALJ) awarded these benefits, and the employer appealed to the appellate division. The appellate division affirmed the ALJ's award insofar as it ordered payment of TTD benefits, but it concluded that Ledezma was not entitled to PPD benefits because his entitlement to income benefits precluded such an award. The employer subsequently appealed to the superior court, which affirmed the ruling of the State Board of Workers' Compensation under the "any evidence" standard. This appeal ensued.

According to the employer, requiring it to pay income benefits contravenes the doctrine set forth in *Hoffman Plastic Compounds v. Nat. Labor Relations Bd.*[2] and violates equal protection. The employer also asserts that Ledezma failed to establish that he had undergone a change in condition, which is a prerequisite to the resumption of benefits, and that his claim is barred by the statute of limitation. We address each argument in turn.[3]

1. The employer maintains that requiring it to pay benefits to a noncitizen who is incapable of working in the United States violates the doctrine set forth in *Hoffman*. In *Hoffman*, the United States Supreme Court found that the National Labor Relations Board lacked authority to award back pay to an illegal alien who had never been authorized to work in this country. Specifically, the U. S. Supreme Court reasoned "that awarding backpay to illegal aliens runs counter to policies underlying [the Immigration Reform and Control Act of 1986 (IRCA)]," which prohibits employment of illegal aliens in the United States.[4]

The employer's argument is not entirely clear. By contending, albeit indirectly, that this Court is bound by *Hoffman*, the employer seems to suggest that federal law preempts state law in this regard. This argument is not well-founded.

"The issue of federal preemption of state law is fundamentally a question of Congressional intent."[5] Congress may express its intent

---

[1] Ledezma, who was not present at the hearing, also sought rehabilitation benefits and medical benefits. However, his claim for these benefits is not at issue on appeal.

[2] 535 U. S. 137 (122 SC 1275, 152 LE2d 271) (2002).

[3] The employer filed a supplemental brief with this Court asserting a new basis for denying Ledezma's claim. Citing *Gonzalez v. Dept. of Transp.*, 265 Ga. App. 610 (594 SE2d 783) (2004) (physical precedent only), the employer argues that as an alien who resides in a foreign country, Ledezma is unable to bring suit in Georgia. "This court, however, 'will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal.' " *Aukerman v. Witmer*, 256 Ga. App. 211, 218 (3) (568 SE2d 123) (2002).

[4] *Hoffman*, supra at 149.

[5] (Punctuation omitted.) *Brooks-Powers v. MARTA*, 260 Ga. App. 390, 392 (1) (579 SE2d 802) (2003).

to preempt state law: "(1) by expressly defining the extent of preemption; (2) by regulating an area so pervasively that an intent to preempt the entire field may be inferred; and (3) by enacting a law that directly conflicts with state law."[6] Here, as there is no express preemption or directly conflicting law, the employer bears the burden of establishing the existence of an implied preemption.[7] However, the employer makes no effort to establish such implied preemption and thus fails to meet its burden. Moreover, although this is an issue of first impression in Georgia, other states that have addressed this issue have concluded there is no conflict between IRCA and a state's workers' compensation statutes that prohibits an illegal alien from receiving benefits.[8]

In this same enumeration of error, the employer contends that because, under IRCA, it cannot re-employ Ledezma, it should be able to stop paying him income benefits. The only case in which this Court has addressed payment of workers' compensation benefits to illegal aliens is *Dynasty Sample Co. v. Beltran*.[9] In *Beltran*, an illegal alien severed two of his fingers during the course of his employment. When the employer discovered Beltran's status as an alien, it fired him. Beltran then sought payment of TTD benefits, which the State Board awarded from the date of injury until the date Beltran was fired. The employer appealed, contending that it should be able to avoid paying Beltran benefits altogether based upon his fraudulent misrepresentation during the hiring process.[10] This Court rejected the employer's argument and ordered payment of income benefits until the date Beltran was fired.

According to the employer, because it is incapable of offering Ledezma light duty employment, it should be able to suspend benefits under the reasoning in *Beltran*. Implicit in the employer's argument is the contention that Ledezma is capable of returning to work in some capacity. However, the ALJ found that Ledezma remains "totally disabled and [is] unable to work at this time." The appellate division agreed.

---

[6] (Punctuation omitted.) *Ga. Public Svc. Comm. v. CSX Transp.*, 225 Ga. App. 787, 788-789 (2) (484 SE2d 799) (1997).

[7] See *Brooks-Powers*, supra.

[8] See *Correa v. Waymouth Farms*, 664 NW2d 324 (Minn. 2003); *Reinforced Earth Co. v. Workers' Compensation Appeals Bd. (Astudillo)*, 570 Pa. 464 (810 A2d 99) (2002).

[9] 224 Ga. App. 90 (479 SE2d 773) (1996).

[10] The employer in *Beltran* based its argument on holding in *Ga. Elec. Co. v. Rycroft*, 259 Ga. 155 (378 SE2d 111) (1989). This analysis does not apply to the case at bar.

Thus, the dispositive issue is whether any evidence supports the State Board's determination that Ledezma remains totally disabled.[11] Given the fact that Ledezma is partially paralyzed as a result of his injury and that his treating physician said that Ledezma would have to undergo additional testing before being released to work, some evidence supports the award of the State Board. Accordingly, this enumeration of error presents no basis for reversal.[12]

2. The employer also asserts that requiring it to pay benefits to a deported alien, who is thus incapable of working in this country, violates equal protection. Again, the employer's argument is predicated on the underlying assumption that Ledezma is physically capable of returning to work in some capacity. And as there is some evidence that this is not the case, this argument lacks merit.

3. According to the employer, Ledezma failed to establish that he had undergone a change in condition for the worse under *Maloney v. Gordon County Farms*.[13] Under *Maloney*, a workers' compensation claimant who seeks reinstatement of benefits must prove that he: (1) suffered a loss of earning power as a result of a compensable work injury; (2) continues to suffer physical limitations attributable to that injury; and (3) has made a diligent, but unsuccessful, attempt to secure suitable employment.[14] Because Ledezma has not made a diligent job search, the employer asserts that he has failed to establish entitlement to income benefits.

Yet again, the employer's argument is predicated upon its contention that Ledezma is physically capable of returning to work. Indeed, *Maloney* applies in the context of an injured worker who actually returns to work and either stops working as a result of the injury or is terminated. Here, Ledezma has never actually returned to work, and the only reason his TTD benefits were suspended earlier was due to his incarceration. Given the State Board's finding that Ledezma is totally disabled, *Maloney* does not apply.[15]

4. Finally, the employer argues that Ledezma's claim for benefits is barred by the two-year statute of limitation contained in OCGA § 34-9-104. However, as *Holt's Bakery v. Hutchinson* makes clear, the two-year statute of limitation does not begin running until all income benefits, including PPD payments, due under the Act have been paid.[16] As Ledezma has never been paid PPD benefits based on his

---

[11] See *Johnson v. Weyerhaeuser Co.*, 231 Ga. App. 627, 628-629 (499 SE2d 916) (1998).

[12] See id.

[13] 265 Ga. 825 (462 SE2d 606) (1995).

[14] Id. at 828.

[15] See *Richardson v. Dennis, Corry, Porter & Thornton*, 216 Ga. App. 476, 477 (454 SE2d 643) (1995).

[16] 177 Ga. App. 154, 159-161 (3) (338 SE2d 742) (1985). We note that this case construes the

65.5 percent rating, these income benefits are potentially due. It follows that the State Board correctly concluded that the statute of limitation does not bar this claim.[17]

## Case No. A04A0285

5. Although the ALJ ordered the employer to pay PPD benefits, the appellate division reversed this portion of the award. The appellate division did so on two bases. First, it found that Ledezma was entitled to TTD benefits and that OCGA § 34-9-263 (b) (2) precludes the payment of PPD benefits while an employee is entitled to TTD benefits. Secondly, the appellate division noted that, during a hearing in 1998, another ALJ reserved the issue of Ledezma's entitlement to PPD benefits and thus reasoned that the employer should not have to pay such benefits retroactively.

On appeal, Ledezma argues that the employer should have commenced payment of PPD benefits when he was incarcerated in 1996. Ledezma argues that since he was no longer receiving TTD benefits at that point in time, the employer was required to commence payment of PPD benefits. We disagree.

OCGA § 34-9-263 (b) (2) expressly states that PPD benefits "shall not become payable so long as the employee is *entitled* to benefits under Code Section 34-9-261 or 34-9-262."[18] Thus, it is not receipt of benefits that triggers payment, but entitlement to such benefits. Here, Ledezma has been totally disabled from employment since his injury. Thus, he has been entitled to receive TTD benefits pursuant to OCGA § 34-9-261 since that date. The only reason he has not *received* benefits is because of his incarceration.[19] And we see no reason to require an employer to commence PPD benefits when an employee is incarcerated because to do so might provide a windfall to the employee.

Generally, entitlement to TTD benefits is capped at 400 weeks.[20] However, for cases designated "catastrophic," the 400 week cap does not apply.[21] Thus, an employee with a catastrophic injury could conceivably receive TTD benefits for his entire life and thus never receive PPD benefits. For example, if Ledezma's injury is ever classified as catastrophic, he could forever be "entitled" to TTD

---

pre-1990 version of OCGA § 34-9-104 (b), which is applicable to this case given the 1989 date of injury.

[17] Id. at 161.

[18] (Emphasis supplied.)

[19] See *Mize v. Cleveland Express*, 195 Ga. App. 56 (392 SE2d 275) (1990).

[20] See OCGA § 34-9-261.

[21] See id.

benefits. And if we were to order the employer to pay PPD benefits while Ledezma was in jail, the only reason he would have received those benefits is because of his incarceration. We see no reason to provide such boon to an employee. Accordingly, we agree with the appellate division that Ledezma remained "entitled" to TTD benefits and thus was not entitled to receive a lump sum payment of PPD benefits.

*Judgments affirmed. Eldridge and Adams, JJ., concur.*

DECIDED MARCH 30, 2004 —

*Donald M. Shivers, Edwin G. Russell, Jr., Clements & Sweet, John F. Sweet, George Handelsman,* for appellants.

*Kenneth W. Brosnahan,* for appellee.