## A04A1491. CONTINENTAL PET TECHNOLOGIES, INC.
## v. PALACIAS.
### (604 SE2d 627)

BLACKBURN, Presiding Judge.

Continental PET Technologies, Inc. (Continental) appeals the affirmation by the superior court of an award of benefits to Juana Sandoval Palacias (Palacias) by the State Workers' Compensation Board. Continental contends that because of Palacias's illegal immigrant status, the trial court erred in finding the existence of an employer/employee relationship. We disagree and affirm.

The factual findings of the Appellate Division of the State Board of Workers' Compensation must be affirmed by the superior court and by this Court when supported by any evidence. *Ga.-Pacific Corp. v. Wilson.*[1] Viewed in a light most favorable to the decision of the Board, the evidence shows that Palacias was injured on the job while working for Continental. She had been illegally in the United States since 1994 and had worked for and been paid by Continental in a full-time capacity for the five years prior to her accident. She had originally used fraudulent documents to secure her position as a janitor for Continental.

Continental denied her initial claim for workers' compensation coverage for medical expenses and for lost wages. Following a hearing, an administrative law judge (ALJ) determined that Palacias was injured in the course of her employment with Continental, and the ALJ directed Continental to pay Palacias workers' compensation benefits. Finding this decision was supported by a preponderance of competent and credible evidence, the Board adopted the award as its own, which ruling was subsequently affirmed by the superior court. The lone enumeration of error is that the superior court erred in failing to reverse the decision of the Board.

1. Continental first argues that Palacias is barred from seeking workers' compensation benefits under Georgia law because federal law makes it unlawful to employ an illegal alien and therefore any employment contract between Continental and Palacias was void. Based on this premise, Continental argues that Palacias was never an employee and that therefore Continental cannot be liable for workers' compensation benefits for the injury suffered by Palacias.

Georgia's Workers' Compensation Act provides that, excepting circumstances not applicable here, an employee includes "every person in the service of another under any contract of hire or apprenticeship."[2] This broad definition would include illegal aliens.

---

[1] *Ga.-Pacific Corp. v. Wilson*, 240 Ga. App. 123, 124-125 (1) (522 SE2d 700) (1999).
[2] OCGA § 34-9-1 (2).

Therefore, the question before this Court is whether the Immigration Reform and Control Act of 1986[3] (IRCA), which prohibits the knowing hiring of illegal aliens and the use of fraudulent documents to obtain employment, and the corresponding federal regulations,[4] preempt state law for employment purposes relating to workers' compensation. We hold they do not.

Preemption is a doctrine which ousts a State or other governmental entity from the exercise of police power in an area in which the power of federal government is, by law or by implication, preeminent. *Owen v. City of Atlanta*.[5] "The preemption doctrine is rooted in the Supremacy Clause and grows from the premise that when state law conflicts or interferes with federal law, state law must give way." (Punctuation omitted.) *Ga. Public Svc. Comm. v. CSX Transp.*[6]

"Whether federal statutes or regulations preempt state law is a question of congressional intent." (Punctuation omitted.) *Gentry v. Volkswagen of America*.[7] "Congress may express its intent to preempt state law: (1) by expressly defining the extent of preemption; (2) by regulating an area so pervasively that an intent to preempt the entire field may be inferred; and (3) by enacting a law that directly conflicts with state law." (Punctuation omitted.) *Wet Walls v. Ledezma*.[8]

Continental does not argue that Congress has expressly preempted the law in this area nor that the IRCA directly conflicts with Georgia's law on workers' compensation. Indeed, when considering the IRCA, *Wet Walls v. Ledezma* recently concluded that "there is no express preemption or directly conflicting law" that would preclude Georgia from awarding workers' compensation benefits to an illegal alien. Id. at 687 (1).

Rather, Continental argues only that "Congress has regulated the field of the status of illegal aliens so extensively as to make clear its intent to control the employment status of those persons. . . . [T]here is a strong implication that Congress intended to have sole determination as to the inability of illegal aliens to attain employee status in this country."

Although the IRCA and accompanying regulations address in detail the hiring of undocumented aliens, they do not purport to intrude into the area of what protections a State may afford these

---

[3] 8 USCS §§ 1324a; 1324c.

[4] 8 CFR § 274a.12.

[5] *Owen v. City of Atlanta*, 157 Ga. App. 354, 356 (277 SE2d 338) (1981), aff'd, *City of Atlanta v. Owen*, 248 Ga. 299 (282 SE2d 906) (1981), cert. denied, 456 U. S. 972 (102 SC 2235, 72 LE2d 846) (1982).

[6] *Ga. Public Svc. Comm. v. CSX Transp.*, 225 Ga. App. 787, 788 (2) (484 SE2d 799) (1997).

[7] *Gentry v. Volkswagen of America*, 238 Ga. App. 785, 787 (2) (521 SE2d 13) (1999).

[8] *Wet Walls v. Ledezma*, 266 Ga. App. 685, 686-687 (1) (598 SE2d 60) (2004).

aliens. Nothing in the IRCA or accompanying regulations hints at a desire to deny workers' compensation benefits to injured employees, whether undocumented or otherwise. The Florida District Court of Appeals specifically held that the IRCA does not "so thoroughly occupy the field as to require a reasonable inference that Congress left no room for states to act." *Safeharbor Employer Svcs. I v. Velazquez.*[9]

Finally, *Wet Walls v. Ledezma* held that "although this is an issue of first impression in Georgia, other states that have addressed this issue have concluded there is no conflict between IRCA and a state's workers' compensation statutes that prohibits an illegal alien from receiving benefits." Id. at 687 (1). Indeed, the Minnesota Supreme Court has held:

> As written, the IRCA does not prohibit unauthorized aliens from receiving state workers' compensation benefits generally. . . . The focus of the IRCA is on preventing employers from hiring unauthorized aliens. Aside from the prohibition on tendering fraudulent documents, the IRCA does not prohibit unauthorized aliens from seeking or accepting employment in the United States. The IRCA is not aimed at impairing existing state labor protections. . . . [W]e conclude that the IRCA was not intended to preclude the authority of states to award workers' compensation benefits to unauthorized aliens.

(Citations omitted.) *Correa v. Waymouth Farms.*[10] See *The Reinforced Earth Co. v. Workers' Comp. Appeal Bd. (Astudillo)*[11] (Pennsylvania: neither the IRCA nor public policy preempts workers' compensation awards to illegal aliens).

These holdings are consistent with the intent of the IRCA. The Connecticut Supreme Court noted that "[t]he primary purpose of the [IRCA] was to establish procedures that inhibit the employment of undocumented workers and to punish employers who knowingly offer jobs to those workers." *Dowling v. Slotnik.*[12] Inasmuch as the goal of the IRCA is to reduce the incentives for employers to hire illegal aliens, that goal would be subverted by allowing employers to avoid workers' compensation liability for work-related injuries to those employees since such would provide employers with a financial

---

[9] *Safeharbor Employer Svcs. I v. Velazquez,* 860 S2d 984, 986 (Fla. Dist. Ct. App. 2003).

[10] *Correa v. Waymouth Farms,* 664 NW2d 324, 329 (Minn. 2003).

[11] *The Reinforced Earth Co. v. Workers' Comp. Appeal Bd. (Astudillo),* 810 A2d 99, 104-106 (Pa. 2002).

[12] *Dowling v. Slotnik,* 712 A2d 396, 410-411 (III) (B) (Conn. 1998).

incentive to hire illegal aliens. Id. Thus, *Dowling v. Slotnik* concluded that "the [IRCA] does not preempt, either expressly or impliedly, the authority of the states to award workers' compensation benefits to undocumented aliens." Id. at 405 (II) (B).

Continental cites to the U. S. Supreme Court case of *Hoffman Plastic Compounds v. Nat. Labor Relations Bd.*[13] for the proposition that awarding workers' compensation benefits would contravene the purposes of the IRCA. *Hoffman* held that the policy of the IRCA does prohibit the National Labor Relations Board from employing the nontraditional federal remedy of awarding of backpay to illegal immigrants who were the subject of National Labor Relations Act (NLRA) violations. Id. at 151. Other more "traditional remedies" under the NLRA were sufficient to effectuate national labor policy. Id. at 152. Based on this language, at least two state jurisdictions have concluded that under *Hoffman*, labor protections other than backpay are available to illegal aliens, and that therefore neither *Hoffman* nor the IRCA intended to prohibit the awarding of workers' compensation benefits to illegal aliens. See *Safeharbor Employer Svcs. I*, supra at 986 (Florida); *Correa*, supra at 329 (Minnesota). We agree.

Based on the above, we hold that federal law does not preempt Georgia law on the question of whether or not an illegal alien may receive workers' compensation benefits for employment as defined by OCGA § 34-9-1. Since this statute defines employee as "every person in the service of another under any contract of hire or apprenticeship," "every person" would necessarily include illegal aliens. OCGA § 34-9-1 (2). And, "[e]xcept in plain and indisputable cases the question of whether one is an employee within the meaning of the Workmen's Compensation Act, and whether an injury received by such person was received in the course of the employment, are questions of fact for decision by the [B]oard." *Employers Ins. Co. of Alabama v. Bass.*[14] As stated earlier, a Board finding of fact that is supported by any evidence is conclusive and binding upon the superior court and the Court of Appeals. *Abdul-Hakim v. Mead School &c. Products.*[15]

It is undisputed that Palacias performed services for Continental such that she would be considered an employee under OCGA § 34-9-1 (2). The ALJ found that she was an employee and was injured and eligible for Title 34 benefits during this employment. The Board

---

[13] *Hoffman Plastic Compounds v. Nat. Labor Relations Bd.*, 535 U. S. 137 (122 SC 1275, 152 LE2d 271) (2002).

[14] *Employers Ins. Co. of Alabama v. Bass*, 81 Ga. App. 306 (1) (58 SE2d 516) (1950).

[15] *Abdul-Hakim v. Mead School &c. Products*, 267 Ga. App. 121, 123 (1) (598 SE2d 808) (2004).

adopted these findings, which decision was affirmed by the superior court. As there was evidence to support the findings, we must affirm.

2. Continental next argues that the fraud perpetrated by Palacias in using false papers to obtain employment vitiates her right to recover workers' compensation benefits for her injuries. We rejected this argument in *Dynasty Sample Co. v. Beltran,*[16] where the employer failed to show a causal connection between the employee's misrepresentation and the workers' compensation injury suffered by the employee. Since there is no showing of such a causal connection here either, we similarly reject the argument.

*Judgment affirmed. Smith, C. J., Andrews, P. J., Johnson, P. J., Eldridge, Mikell and Adams, JJ., concur. Ruffin, P. J., Barnes, Miller, Ellington and Phipps, JJ., concur fully and specially.*

MILLER, Judge, concurring fully and specially.

While I concur fully in the majority opinion, I write separately to underscore the importance of our holding that Palacias is an "employee" for purposes of Georgia's Workers' Compensation Act. As the majority correctly holds, this is not a case of federal preemption. Indeed, this is a case that is squarely governed by the clear and well-defined provisions of the Workers' Compensation Act. Despite the fact that Palacias is an illegal alien, and even though she originally used fraudulent documents to obtain the janitorial position in which she was injured, the longstanding policy in Georgia under the Act mandates that Palacias be treated no differently than any other employee who is injured on the job.

When the Act was first passed in 1920, the definition of the essential term "employee" read in relevant part:

> (b) Employee shall include *every person, including a minor in the service of another* under any contract of hire or apprenticeship, written or implied, except one whose employment is not in usual course of the trade, business, occupation or profession of the employer. . . . *Minors are included even though working in violation of any child labor law or other similar statute, provided that nothing herein contained shall be construed as repealing or altering any such law or statute.* . . .

Ga. L. 1920, pp. 167, 168. While later revisions to this statute moved the language concerning child workers further down in the paragraph and thus a few more lines away from the language defining

---

[16] *Dynasty Sample Co. v. Beltran,* 224 Ga. App. 90, 92 (479 SE2d 773) (1996).

employees as "every person under any contract of hire or apprentice-ship," both parts of the statute have survived virtually intact over the years. See OCGA § 34-9-1 (2).

From the moment this legislation was enacted, the General Assembly anticipated that employers might hire illegal workers and intended that such workers be covered by its workers' compensation law. In 1920, the legislature was most concerned that such workers might well be children working in violation of the child labor laws recently passed. Today, it may be more likely that the worker has entered the United States in violation of federal immigration laws. As to *all* illegal workers, however, the State's fundamental policy — implied in the original statute's emphasis on child workers, stated outright in cases thereafter, and codified at last in 1994 — remains paramount today: that the Act "be construed reasonably and liber-ally" for the purpose of extending its "beneficent provisions . . . to every class of workman and employee that can fairly be brought within [them]." *Lee v. Claxton*, 70 Ga. App. 226, 228 (28 SE2d 87) (1943); *Malcom v. Sudderth*, 98 Ga. App. 674, 685 (106 SE2d 367) (1958); OCGA § 34-9-23, Ga. L. 1994, p. 887, § 4 (allowing liberal construction "only for the purpose of bringing employers *and* employ-ees within the provisions of this chapter and to provide protection for *both*") (emphasis supplied).

Under the current statutory scheme, employees cannot sue employers for injuries sustained on the job. Likewise, employers cannot plead the illegal nature of the employment contract after an employee whom they have included for underwriting purposes on their workers' compensation policy has been injured, regardless of whether or not they knew that the worker was illegal. The purpose of workers' compensation insurance is to provide payment after a worker is injured on the job, and in conjunction with the Act elimi-nates questions as to the relative knowledge or fault of employers and employees, either at the time of injury or at the time the employment relationship was created. *Slaten v. Travelers Ins. Co.*, 197 Ga. 1, 2-3 (28 SE2d 280) (1943); *Travelers Ins. Co. v. Southern Elec.*, 209 Ga. App. 718, 719 (1) (434 SE2d 507) (1993).

When we hold that Palacias is entitled to workers' compensation benefits despite her illegal status and her fraudulent obtainment of employment, then, we do only what the Workers' Compensation Act has long required: to enforce its social contract between the employer, the person who retains the benefit of an employee's labor, and the employee, now injured on the employer's job. To allow an employer to reap the benefit of an employee's services (even when such services are rendered by an illegal alien), without holding the employer responsible for the payment of workers' compensation benefits when the employee is injured on the job, would break the social contract

between the employer and its employee and undermine the entire purpose of Georgia's Workers' Compensation Act.

I am authorized to state that Presiding Judge Ruffin, Judge Barnes, Judge Phipps and Judge Ellington join in this opinion.

DECIDED SEPTEMBER 13, 2004 — 

Wilson & Epstein, Warner R. Wilson, Jr., for appellant.
Burdine & Brown, Thomas F. Brown II, Claxton & Claxton, Darcy S. Duval, for appellee.