A04A1542. EARTH FIRST GRADING et al. v. GUTIERREZ.
(606 SE2d 332)

PHIPPS, Judge.

Earth First Grading and its workers' compensation insurance carrier, Builders Insurance Group/Association Services, Inc., (hereinafter "employer/insurer") appeal a superior court order affirming the State Board of Workers' Compensation ("State Board") award of temporary total disability (TTD) benefits to Ancelmo Gutierrez. The employer/insurer contend that Gutierrez's illegal immigration status bars him from receiving benefits and that, during the relevant period, he was no longer disabled. For reasons that follow, we affirm.

Earth First hired Gutierrez in August 2000. He was in the United States illegally and had presented fraudulent documents to Earth First to secure the employment. In August 2001, Gutierrez's back was injured on the job. The employer/insurer accepted Gutierrez's claim as compensable, paying him TTD benefits and providing medical treatment. Based upon a full-duty work release by Gutierrez's treating physician, the employer/insurer suspended the TTD benefits on October 8, 2001. Gutierrez, however, never returned to work at Earth First.

On February 5, 2002, Gutierrez obtained an independent medical evaluation from a different physician, who determined that the condition of his back restricted his activities. Meanwhile, during two weeks in February 2002, Gutierrez worked up to nine hours a day at another company sweeping construction sites. He stopped doing that work because the work ended. In May 2002, Gutierrez began work at a nursery moving plants, which he left for reasons unrelated to his physical ability.

In June 2002, Gutierrez requested a hearing seeking reinstatement of the TTD benefits that had been suspended in October 2001, claiming he was still disabled. During discovery the next month, the employer/insurer learned of Gutierrez's illegal immigration status. The employer/insurer then took the positions that, not only was Gutierrez no longer disabled, but his undocumented status rendered him ineligible to receive TTD benefits. As to the latter, they presented four arguments: (1) federal law forecloses receipt of workers' compensation benefits by undocumented workers; (2) the presentment of fraudulent documentation to secure employment bars receipt of

workers' compensation benefits; (3) an undocumented worker cannot meet the definition of "employee" as defined by Georgia's Workers' Compensation Act;[1] and (4) an undocumented worker is analogous to an incarcerated worker in that both classes of individuals experience a diminution in earnings for reasons unrelated to any work accident.

After a hearing, the administrative law judge (ALJ) found that Gutierrez continued to have only "slight" work restrictions from October 2001 until February 2002 and that around the latter date, Gutierrez began a series of jobs — none of which he left because he was physically unable to do the work. The ALJ thus ruled that, as of February 2002, Gutierrez was not entitled to TTD benefits because he was no longer disabled.

As for the period from October 9, 2001, to February 1, 2002, the ALJ agreed with the employer/insurer's argument that Gutierrez's illegal immigration status barred TTD benefits. It determined that, because an undocumented worker could not legally apply for and accept a job in the United States, it was Gutierrez's illegal immigration status that precluded him from working, not his disability. The ALJ reasoned that Gutierrez's situation was similar to that of a convicted, incarcerated person, in that something other than the work-related injury precluded both from working. (The ALJ rejected the employer/insurer's other three ineligibility arguments.)

Upon appeals by Gutierrez and the employer/insurer, the appellate division of the State Board reversed the ALJ's award. While it agreed that the record supported a finding that Gutierrez had undergone a change in condition for the better as of February 1, 2002, it ruled that the ALJ had erred in determining that the employer/insurer had met its burden of establishing that Gutierrez had undergone a change in condition for the better as of October 8, 2001. And it found no evidence that suitable work had been available. Further, the appellate division ruled that the ALJ had erred by not rejecting all of the employer/insurer's arguments about Gutierrez's undocumented status. Therefore, the appellate division concluded that from October 9, 2001 to February 1, 2002, Gutierrez remained entitled to receive TTD benefits. The superior court affirmed the appellate division's decision.

1. The employer/insurer contend that, where the worker is undocumented, the Georgia Workers' Compensation Act is preempted by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA), "a comprehensive scheme prohibiting the employment of illegal aliens in the

---

[1] OCGA § 34-9-1 et seq.

United States."[2] In an attempt to support this contention, appellants cite *Hoffman Plastic Compounds v. Nat. Labor Relations Bd.*[3] In that case, the United States Supreme Court ruled that the National Labor Relations Board lacked authority to award backpay to an illegal alien who had never been authorized to work in this country, reasoning that "awarding backpay to illegal aliens runs counter to policies underlying IRCA."[4]

But this court has already concurred with other states that have concluded that "neither *Hoffman* nor the IRCA intended to prohibit the awarding of workers' compensation benefits to illegal aliens. [Cits.]"[5] We reiterate, "[f]ederal law does not preempt Georgia law on the question of whether or not an illegal alien may receive workers' compensation benefits for employment as defined by OCGA § 34-9-1."[6] A contrary holding would reward employers for hiring illegal aliens.

2. The employer/insurer contend that an undocumented worker does not fall within the purview of the Georgia Workers' Compensation Act. They argue that an undocumented worker cannot enter into a legal employment contract and therefore cannot meet the definition of "employee" as defined by that Act. But under section 34-9-1 (2) of that Act, "employee" includes "every person in the service of another under any contract of hire or apprenticeship." And, as we have already determined that " 'every person' would necessarily include illegal aliens,"[7] this contention is without merit.

3. Citing OCGA § 34-9-17 (a), the employer/insurer contend that Gutierrez's presentment of fraudulent documents to Earth First to secure employment bars him from receiving TTD benefits. The cited Code section provides, "No compensation shall be allowed for an injury or death due to the employee's willful misconduct. . . ."

This reliance on OCGA § 34-9-17 (a) is misplaced. Where, as here, the employer fails to show a causal connection between the employee's misrepresentation and the work-related injury, that Code

---

[2] *Hoffman Plastic Compounds v. Nat. Labor Relations Bd.*, 535 U. S. 137, 147 (122 SC 1275, 152 LE2d 271) (2002); 8 USCS §§ 1324a; 1324c.

[3] *Hoffman*, supra.

[4] Id. at 149; see also *Wet Walls v. Ledezma*, 266 Ga. App. 685, 686 (1) (598 SE2d 60) (2004).

[5] *Continental PET Technologies v. Palacias*, 269 Ga. App. 561 (604 SE2d 627) (2004) (whole court).

[6] Id.

[7] Id. at 564; accord *Correa v. Waymouth Farms*, 664 NW2d 324 (Minn. 2003) (illegal aliens are "employees" and are protected by the provisions of Minnesota's workers' compensation statutory scheme); *Sanchez v. WCAC Eagle Alloy*, 658 NW2d 510 (Mich. App. 2003) (undocumented aliens are "employees" under Michigan's workers' compensation statutory scheme).

section provides no basis to deny TTD benefits.[8]

4. The employer/insurer contend that an undocumented worker is analogous to an incarcerated person "because neither could meaningfully accept a job even if it were offered." They argue that, just as convicted, incarcerated persons may not receive TTD benefits,[9] neither should undocumented workers.

OCGA § 34-9-240 (a) provides: "If an injured employee refuses employment procured for him or her and suitable to his or her capacity, such employee shall not be entitled to any compensation . . . at any time during the continuance of such refusal unless in the opinion of the board such refusal was justified." Georgia law holds that an injured employee's TTD benefits may be suspended upon conviction and incarceration because "[a]ny offer of employment that may have been tendered to [the employee] would [be] ineffectual since [the employee] could not meaningfully accept."[10]

We reject appellants' argument because Gutierrez's illegal immigration status did not render him unable to "meaningfully" accept employment during the period at issue in this case. It is undisputed that during his employment with Earth First, Gutierrez was an illegal alien. And, as noted by the appellate division, the employer did not learn of Gutierrez's immigration status until long after the period for which he seeks TTD benefits. Accordingly, the superior court did not err in affirming the appellate division's ruling that, under these circumstances, Gutierrez's illegal immigration status did not render him unable to meaningfully accept employment during the pertinent period.

5. The employer/insurer contend that the superior court erred in affirming the State Board's "conclusion that the issue in this case is whether [they] met their burden to prove a change in condition for the better."

The employer/insurer assert that this case is not a change of condition case. To the contrary, the employer/insurer voluntarily paid TTD benefits to Gutierrez; therefore, its subsequent action to decrease such benefits is properly considered a "change in condition" action.[11]

In the same claim of error, the employer/insurer contend that the evidence shows that Gutierrez had experienced a change in condition

---

[8] See *Continental PET Technologies*, supra at 565 (2); *Dynasty Sample Co. v. Beltran*, 224 Ga. App. 90, 92 (479 SE2d 773) (1996).

[9] See *Howard v. Scott Housing Systems*, 180 Ga. App. 690 (350 SE2d 27) (1986); *Mize v. Cleveland Express*, 195 Ga. App. 56 (392 SE2d 275) (1990).

[10] *Mize*, supra.

[11] OCGA § 34-9-104 (a) (1); *Clarke v. Samson Mfg. Co.*, 177 Ga. App. 149, 150-151 (1) (338 SE2d 738) (1985); Kissiah, Ga. Workers' Compensation Law, § 21.01[3] (2nd ed. 2002).

for the better. Where, as here, "an employer unilaterally suspends benefits on the assertion that the employee has the ability to return to work, it is the employer's burden to justify that action. [Cits.]"[12] To suspend Gutierrez's TTD benefits, the employer/insurer had to show that Gutierrez was able to return to work and that suitable work was available.[13]

The ALJ found, and the appellate division concurred, that, based on the independent medical evaluation, Gutierrez continued to suffer from a back injury that restricted his working, as of October 8, 2001. The ALJ also found, and the appellate division concurred, that the employer/insurer had not established that suitable light-duty work had been made available to Gutierrez.

Where supported by some competent evidence, findings of fact by the appellate division of the State Board are binding upon the superior court and this court.[14] Although the evidence presented might have supported different findings by the appellate division, on appeal, "both this court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division."[15] Viewed in this light, there was some evidence to support the finding that Gutierrez had not experienced a change in condition for the better as of October 8, 2001. Thus, the superior court did not err in upholding the appellate division's decision that Gutierrez was eligible for TTD benefits from October 9, 2001 to February 1, 2002.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 3, 2004 — ▮▮▮▮▮▮▮

*Swift, Currie, McGhee & Hiers, Richard A. Watts, Michael Rosetti*, for appellants.
*Webster & Corless, Carlos L. Corless*, for appellee.

---

[12] *Vulcan Materials Co. v. Pritchett*, 227 Ga. App. 530, 531 (1) (489 SE2d 558) (1997).

[13] See id.; *Freeman v. Continental Baking Co.*, 212 Ga. App. 855, 856 (1) (443 SE2d 520) (1994).

[14] See OCGA § 34-9-105 (c) (4); *Ga.-Pacific Corp. v. Wilson*, 240 Ga. App. 123, 124-125 (1) (522 SE2d 700) (1999).

[15] (Punctuation and footnote omitted.) *ABB Risk Mgmt. Svc./Ga. Kaolin v. Lord*, 254 Ga. App. 88, 91 (561 SE2d 225) (2002).