A05A1985. MARTINES v. WORLEY & SONS CONSTRUCTION.
(628 SE2d 113)

SMITH, Presiding Judge.

We granted the claimant's application for discretionary appeal in this workers' compensation case to consider the scope of a "justified" refusal to accept a "suitable job" within the meaning of OCGA § 34-9-240. We conclude that an injured worker's refusal to accept a suitable job based on a *legal* inability to perform the job resulting from the worker's voluntary conduct, rather than a lack of skill or physical capacity, is not justified as a matter of law. We therefore affirm the judgment of the superior court.

The facts of this case are not in dispute. While working for Worley & Sons Construction, Merced Martines suffered a work-related injury to his left foot. After medical treatment, he was released by his physician to return to work with restrictions. His employer offered him a position as a delivery truck driver, a job falling within the restrictions set by his physician. He agreed to accept the job and reported to work. Before allowing him to drive a company truck, however, his employer asked him to show a driver's license and documentation that he was in the country legally. At that time, he revealed that he could not produce a Georgia driver's license and could not obtain one because, as all parties concede, he entered this country illegally.

No evidence was presented that he is unable to drive for any physical or health-related reason or that he does not possess the ability to operate the vehicle. In fact, although he testified at the hearing that he did not know how to drive "very well," he acknowledged that he drove in Mexico and also was confronted with his earlier deposition testimony that he knew how to drive and would drive if he could obtain a license. Martines left his employer's office and did not return to work; he contends that his condition worsened after he left work that day so as to render his disability total. His physician saw him two days later and certified him unable to return to work for three weeks.[1] From this report, the administrative law judge (ALJ) determined that Martines "did not undergo a physical change for the better as of September 23, 2003." The ALJ also found

---

[1] We note, however, that a second or third medical opinion obtained by Martines's counsel approximately two months later concluded that he remained capable of light duty work consistent with the activities originally permitted by the previous physician.

that the job offered to Martines was not suitable because he does not possess the driver's license required for the job. The Appellate Division of the State Board of Workers' Compensation affirmed the judgment of the ALJ.

In a detailed 11-page order, the superior court carefully analyzed the issues and reversed the board, finding that it applied the wrong legal standard to determine the suitability of the proffered job. The court went on to conclude that Martines did not meet his burden of demonstrating that his refusal of the work was justified and that the ALJ's finding that Martines did not undergo a physical change for the better as of September 23 was based upon "facts which had not yet occurred." The court accordingly reversed the award of temporary total disability benefits. This court granted Martines's application for discretionary appeal from the superior court's judgment.

"A finding of fact by an [ALJ] or the State Board of Workmen's Compensation, when supported by any evidence, is conclusive and binding." (Citation, punctuation and emphasis omitted.) *Roy v. Norman*, 261 Ga. 303, 305 (404 SE2d 117) (1991). This is not a case in which the facts are in dispute, however, but rather one in which the superior court reversed the board on the basis of errors of law. OCGA § 34-9-105 (c) (5). "[E]rroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review." (Citation and footnote omitted.) *Trent Tube v. Hurston*, 261 Ga. App. 525 (583 SE2d 198) (2003). The issues presented on appeal are therefore whether the board erred as a matter of law in determining that the proffered work was not suitable, and whether the superior court correctly concluded that Martines's refusal of work was not justified.

OCGA § 34-9-240 provides:

(a) If an injured employee refuses employment procured for him or her and suitable to his or her capacity, such employee shall not be entitled to any compensation, except benefits pursuant to Code Section 34-9-263, at any time during the continuance of such refusal unless in the opinion of the board such refusal was justified.

(b) Notwithstanding the provisions of subsection (a) of this Code section, if the authorized treating physician releases an employee to return to work with restrictions and the employer tenders a suitable job to the employee within those restrictions, then:

(1) If the employee attempts the proffered job and is unable to perform the job for more than 15 working days, then weekly benefits shall be immediately reinstated, and the

burden shall be upon the employer to prove that the employee is not entitled to continuing benefits; or

(2) If the employee refuses to attempt the proffered job, then the employer may unilaterally suspend benefits upon filing with the board the appropriate form with supporting documentation of the release to return to work with restrictions by the authorized treating physician, the tender of a suitable job within those restrictions, and a statement that the employee did not attempt the proffered job. Under those circumstances, the burden shall shift to the employee to prove continuing entitlement to benefits.

The Georgia Supreme Court has directly addressed this Code section in *City of Adel v. Wise*, 261 Ga. 53 (401 SE2d 522) (1991):

The test of OCGA § 34-9-240 is two-pronged. The board must first determine whether the employment offered by the employer and refused by the employee is suitable to the capacity of the employee. If the board finds that the proffered employment is suitable within the meaning of the statute, the employee is not entitled to compensation during the continuance of his refusal to work unless in the opinion of the board such refusal was justified. The cases make it clear that the phrase "suitable to his capacity" refers to the employee's capacity or ability to perform the work within his physical limitations or restrictions.

(Citations and punctuation omitted.) Id. at 54-55. The superior court was therefore correct in its determination that the board erred in determining that the proffered work was not "suitable to [Martines's] capacity."

We must next address whether Martines's refusal of the work was justified. While OCGA § 34-9-240 (a) vests discretion in the board to determine whether a refusal of work is justified, that discretion has been explicitly limited by the Georgia Supreme Court, a limitation which we as an intermediate appellate court must follow. For a refusal to be justified, it "must relate to the physical capacity of the employee to perform the job; the employee's ability or skill to perform the job; or factors such as geographic relocation or travel conditions which would disrupt the employee's life." *Wise*, supra, 261 Ga. at 56. An "employee's refusal to accept employment must relate, in some manner, to his physical capacity or his ability to perform the job in order for his refusal to be justified within the meaning of OCGA § 34-9-240." Id. at 55.

The Supreme Court gave specific examples in *Wise* of physical capacity or ability to perform the job. The Court noted that an employee is justified in refusing work that aggravates his injury, or work that requires relocation, or work that he lacks the skills to perform, such as typing. But he is not justified in refusing work due to personal choices unrelated to his work, such as the desire to work a particular shift or avoid nonunion work. Id. at 55-56.

The circumstances here do not present an issue of physical ability or skill to perform the proffered job. The only evidence in the record is that Martines can in fact drive a car and has driven in Mexico, but chose to enter this country illegally and apparently chose not to jeopardize his situation by attempting to obtain a driver's license. It is therefore not a question of his inability to drive a car but his inability to acquire a Georgia driver's license because of his illegal status. OCGA § 40-5-1 (15) ("[N]o person shall be considered a resident for purposes of this chapter unless such person is either a United States citizen or an alien with legal authorization from the U. S. Immigration and Naturalization Service.").

Martines's situation is analogous to that of the individual whose license has been suspended or revoked for a violation of the law. See OCGA §§ 40-5-50 through 40-5-74. Such reasons are unrelated to a driver's "physical capacity or his ability to perform the job," *Wise*, supra, 261 Ga. at 55, but rather arise from his unrelated decision to violate the laws of this state so as to render his license subject to suspension or revocation. Martines's legal status is also analogous to that of the person incarcerated after an adjudication of guilt. *Scott Housing Systems v. Howard*, 256 Ga. 675 (353 SE2d 2) (1987); *Mize v. Cleveland Express*, 195 Ga. App. 56 (392 SE2d 275) (1990).[2]

Our decision in *Earth First Grading v. Gutierrez*, 270 Ga. App. 328 (606 SE2d 332) (2004), is instructive here. Gutierrez's illegal status was unknown when he was hired, and he worked for approximately one year before being injured. Id. He applied for temporary total disability benefits, and the employer argued that "his undocumented status rendered him ineligible to receive TTD benefits." Id. Although *Earth First* did not involve a proffer of alternative work, the employer relied on OCGA § 34-9-240 (a) and *Mize*, supra, to argue that illegal alien status was analogous to incarceration and that Gutierrez therefore "could not meaningfully accept" *any* work. (Citation, punctuation and footnote omitted.) Id. at 331 (4). We rejected

---

[2] But as noted in *Wise*, supra, 261 Ga. at 55-56, one who has not yet been convicted and still has the benefit of the presumption of innocence, but is unable to obtain bail, does not fall within this category. *Howard v. Scott Housing Systems*, 180 Ga. App. 690 (350 SE2d 27) (1986), aff'd, *Scott Housing Systems*, supra, 256 Ga. 675.

this argument, noting that Gutierrez's immigration status was unknown until long after the period for which he sought benefits and that he actually performed work for the employer despite his immigration status. We concluded that his "illegal immigration status did not render him unable to meaningfully accept employment during the pertinent period." Id. Here, in contrast, Martines's admitted illegal immigration status was revealed at the time he refused an otherwise suitable job due to his legal inability to obtain a Georgia driver's license. His illegal immigration status therefore caused his inability to accept the proffered employment.

In addition, as the *Earth First* decision notes, our courts have already recognized that illegal immigration status does not bar an employee from receiving workers' compensation benefits. Id. at 330 (2). Under these circumstances, declaring illegal immigration status to be a basis for justified refusal of employment under OCGA § 34-9-240 would allow an employee already receiving benefits to refuse *any* proffered employment on the basis of his legal inability to perform the work. As the superior court observed,

> an illegal alien would always be justified in refusing suitable work he was otherwise physically capable of performing because an illegal alien would never have the "legal" ability to perform any job for pay in the United States. This situation is analogous to the incarcerated person who is unable to meaningfully accept any offer of employment.

Martines contends that he cannot obtain a driver's license, not because he is in this country illegally, but because "I don't know how to read, and I don't know how to write." The ALJ found that he was unable to obtain a driver's license "because he is unable to read or write and would not be able to pass the test." But the assumption that illiteracy would prevent Martines from acquiring a license is an incorrect conclusion of law on the part of the ALJ. The regulations of the Department of Motor Vehicles allow for the oral testing of illiterate applicants. Ga. Comp. R. & Regs. r. 570-3-.08. And because Martines is not a "resident of this state" under OCGA § 40-5-1 (15), a license may not be issued to him, OCGA § 40-5-24 (b) (1), so the question of administration of the test does not arise.

Martines also contends that equity should forbid the employer from asserting his illegal status, because the employer failed to require that Martines complete the U. S. Department of Justice, Immigration and Naturalization Service ("INS") Employment Eligibility Verification Form, commonly known as the "I-9 Form." See 8 USCS § 1324a (b) (1) (A). But Martines does not cite any authority to show that his employer's failure to require an employment form

sometime before his injury has any legal effect on whether or not his refusal of proffered light duty work was justified. Moreover, one "who would have equity must do equity," OCGA § 23-1-10, and Martines filled out an employment application and provided his employer with a Social Security number which belonged to someone else. To insist upon such an argument would place Martines in the anomalous position of having to contend that he never should have been allowed to work, or receive benefits, at all.

Finally, Martines contends that he was not required to accept the proffered employment because he did not have the physical capacity to perform the job, citing his physician's "finding of total disability . . . two days after employee was supposed to try the job." The superior court correctly concluded that the

> applicable date is September 23, [2003] when the employee reported to work for a proffered position and left due to his inability to provide the employer with documentation of his legal status to work. To apply facts which had not yet occurred to a determination of the condition of the employee on September 23, [2003] would be unfair, overly burdensome and impossible for the employer to anticipate.

We have held that "[t]he statutory test focuses on the time that the lighter-duty employment is offered." *Freeman v. Southwire Co.*, 269 Ga. App. 692, 694 (605 SE2d 95) (2004). Evidence that Martines was unable to work two days later is not evidence that he was unable to work at the time the position was offered, particularly when it is undisputed that he reported to work on the date requested, made no complaints of pain, and, as the ALJ found, returned home because "he was unable to provide proper documentation."

> Just as we have stated that it is illogical and unreasonable to require an employee to give notice of an injury when the employee has not yet learned of the existence of the injury, we likewise find that it is illogical and unreasonable to hold that an employer has sufficient notice of the existence of an injury that has not yet been discovered by either the employee or his treating physician.

(Citation omitted.) *William L. Bonnell Co. v. McKoon*, 184 Ga. App. 516, 517-518 (361 SE2d 680) (1987).

In sum, no evidence was presented that Martines had a physical limitation or a lack of ability or skill which prevented him from physically performing the job of delivery driver at the time he reported for work. His inability to perform the job stems rather from

his legal inability to acquire the necessary Georgia driver's license. The superior court therefore correctly found that the board erred as a matter of law and that Martines's refusal to accept the proposed light-duty work was not justified.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED FEBRUARY 14, 2006 —
RECONSIDERATION DENIED MARCH 7, 2006 — ▮▮▮▮▮▮▮▮

*Smith, Wallis & Scott, Kenneth A. Smith*, for appellant.
*Michael A. Kessler*, for appellee.