**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2014**

# In the Court of Appeals of Georgia

A14A0597. BRASHER v. US XPRESS ENTERPRISES, INC.

MILLER, Judge.

Ronald Brasher was injured during the course of his employment with US Xpress Enterprises ("US Express") and filed a claim for workers' compensation benefits. Following a hearing, an administrative law judge ("ALJ") of the State Board of Workers' Compensation (the "Board") awarded Brasher temporary total disability ("TTD") benefits for the period between March 21, 2012 and April 5, 2012; denied Brasher additional benefits based on his refusal of light-duty work; appointed a treating physician; and ordered US Express to pay for treatment. After the Appellate Division of the Board adopted the ALJ's award, Brasher appealed to the superior court. As a result of the superior court's failure to enter a timely decision, the

Appellate Division's award was affirmed by operation of law.[1] See OCGA § 34-9-105 (b). We granted Brasher's application for discretionary appeal.

On appeal, Brasher contends that: (1) he was entitled to choose his own physician rather than have one appointed for him and have the expenses paid for by US Express because it failed to conform to OCGA § 34-9-201 (c) and (f); (2) the Board erred in finding that the light-duty job that he was offered was suitable and that his reasons for refusing the job were unjustified; (3) the Board erred in failing to award additional TTD benefits; (4) the Board erred in failing to assess a 15 percent late penalty; and (5) the Board violated his due process and equal protection rights. For the reasons that follow, we affirm in part and reverse in part.

> On appeal from an award of the Appellate Division of the State Board of Workers' Compensation, this Court examines the record to see if there is competent evidence to support the award and construes the evidence in a light most favorable to the prevailing party. Further, it is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding, and that neither the superior court nor this Court has any authority to substitute itself as a fact finding body in lieu of the Board.

(Citation and punctuation omitted.) *Ready Mix USA, Inc. v. Ross*, 314 Ga. App. 775 (726 SE2d 90) (2012). "However, erroneous applications of law to undisputed facts,

---

[1] The superior court subsequently entered an untimely order affirming the Appellate Division's award.

as well as decisions based on erroneous theories of law, are subject to the de novo standard of review." (Citation omitted.) *Renu Thrift Store, Inc. v. Figueroa*, 286 Ga. App. 455, 456 (649 SE2d 528) (2007).

So viewed, the evidence shows that Brasher began working as a long-haul truck driver for US Express on July 15, 2010. On March 18, 2012, Brasher left the US Express terminal in Atlanta and drove to Rome to pick up a load. Brasher was turning a steel crank in order to connect his truck to a pre-loaded trailer when a leg of the trailer lowered suddenly, causing the crank to spin and strike him about the chest, back, neck and head. Brasher was taken by ambulance to Floyd Medical Center's emergency room, where he was examined and released to return to work with directions to see a doctor within 24 hours. After being discharged, Brasher drove to the US Express terminal in Atlanta. When he arrived in Atlanta, the fleet manager told Brasher to talk to the terminal site manager if he needed further medical care. The next morning, Brasher complained of numbness in the arms and face to US Express's workers' compensation analyst Penny Norris and asked for medical treatment. Norris advised that "due to the E.R. records I had which gave him no follow up and cleared him, I couldn't do anything further." Norris further stated that the claim had been turned over to the company's insurer and gave Brasher contact

3

information so that he could follow up with the insurer. That same day, Brasher went to an urgent care center but received no treatment.

On March 21, 2012, Brasher went to and was treated at an urgent care center in Atlanta, and was diagnosed with a cervical strain, contusions of the thorax, face, scalp, and chest wall, and neuropathy in his face and upper arm. The doctor prescribed Brasher pain medication and placed him on modified work activity, including restrictions on driving, reaching, squatting, lifting or pushing more than five pounds, and prolonged walking or standing. The urgent care doctor urged Brasher to contact the ER if his condition worsened and to consider "ortho or neuro after [his] next visit." Brasher returned to urgent care on March 23, 2012. Following an examination, the doctor continued Brasher's work restrictions, including no lifting, pushing, or pulling of any weight, no reaching above the shoulders, no squatting or kneeling, and no prolonged standing or walking. Brasher was also given an urgent referral to see an orthopedic surgeon due to decreased upper extremity strength. Brasher returned to urgent care on March 27, 2012, and he was further ordered to limit the use of his arms. On April 3, Brasher visited an urgent care center in Columbus and his work restrictions were continued.

Brasher then returned home to Opelika, Alabama because he had been sleeping in a lounge chair at the US Express terminal. Thereafter, US Express offered Brasher a light-duty position at their terminal in Tunnel Hill. On or about April 5th, 2012, US Express provided Brasher with a bus ticket to Tunnel Hill. When Brasher reported to work, he asked his site manager and, later, Norris for a $25 advance to purchase food to take with his medications. Brasher's requests were refused. After approximately five hours of work, Brasher told the site manager that he was not going to stay on the job and "starve to death." Brasher was given a bus ticket home after signing a form declining the job due to financial reasons. Brasher has not worked since April 9, 2012, although the light-duty job remains available to him.

Brasher filed a notice of claim with the Board on May 17, 2012, seeking temporary total disability benefits starting on March 18, 2012, authorization for medical treatment, and attorney fees and penalties.[2]

After filing his notice, Brasher made several more visits to urgent care. After a July 12, 2012 follow-up, the urgent care doctor requested, but did not obtain approval for, an MRI. Brasher also saw Dr. Empting of the Independent

[2] Brasher initially filed a WC-14 notice of claim form with the Board on April 9, 2012, but did not request disability benefits, authorization for medical treatment or attorney fees and penalties.

5

Neurodiagnostic Clinic in April 2012, and Dr. Empting diagnosed Brasher with a host of spinal problems and limited him to sedentary activity. Brasher visited Dr. Empting a few more times with no change in his restrictions.

In September 2012, Brasher saw Dr. Dorchak, his former orthopedic surgeon. Dr. Dorchak diagnosed cervical and thoracic strains and recommended MRIs to rule out disk herniation and an occult fracture. Dr. Dorchak released Brasher to sedentary duty.

After a hearing on September 25, 2012, the ALJ concluded that: Brasher was entitled to receive income benefits from March 21, 2012 through April 5, 2012; Brasher was not entitled to further benefits because the light-duty job assigned to him after his injury was appropriate, the job remained available, and Brasher's reasons for quitting were not credible; and US Express was obligated to provide Brasher with medical treatment for his injuries, including medical treatment provided by Dr. Dorchak whom the ALJ appointed as an authorized treating physician. The ALJ declined to award fees, concluding that both parties had presented colorable arguments to support their claims.

Brasher appealed the ALJ's decision to the Board, which adopted the ALJ's findings of fact and conclusions of law. Brasher then appealed this decision to the

6

superior court, which conducted a hearing. The superior court did not issue an opinion within 20 days of the hearing, and thus the Board's decision was affirmed by operation of law. OCGA § 34-9-105 (b), (d).

1. Brasher contends that the Board erred in affirming the ALJ's decision to appoint Dr. Dorchak as a treating physician for him, because the relevant statutes authorized him to select his own physician based on US Express's failure to provide timely medical care or to post a panel of authorized physicians. We agree.

OCGA § 34-9-200 (a) requires an employer to furnish the injured employee with medical treatment that is reasonably required, and OCGA § 34-9-201 (b) (1) allows the employer to satisfy that requirement by maintaining a list of six physicians from which an employee may accept services. Under OCGA § 34-9-201 (c), an employer is required to post a panel of physicians in a prominent place and ensure that employees understand the function of the panel and their right to choose a doctor from that list in the event of an on-the-job injury. If the employer fails to provide any of the procedures for selection of physicians as set forth in OCGA § 34-9-201 (c), an employee may select any physician to render service at the expense of the employer. OCGA § 34-9-201 (f).

7

Here, there is no evidence in the record that US Express posted a panel of physicians, gave Brasher appropriate assistance in contacting a physician on the panel, or informed Brasher of his right to select a panel physician following his injury. Rather, when Brasher contacted US Express's workers' compensation analyst the day after his injury, the analyst offered Brasher no assistance. Moreover, Brasher was turned away from attempts to receive treatment from urgent care and from his general practitioner because his injuries were work related. Since US Express did not follow the procedures for the selection of physicians as set forth in OCGA § 34-9-201 (c), Brasher was entitled to choose his treating physician, and US Express is responsible for the medical bills incurred from these visits and other unpaid medical bills. See OCGA § 34-9-201 (f); *Boaz v. K-Mart Corp.*, 254 Ga. 707, 710 (1) (334 SE2d 167) (1985) ("[I]f the employer does not adequately meet the duty of providing treatment the employee may make other arrangements and once treatment by a physician is undertaken an employer may not change positions and cut off the right to continue such treatment."). Since OCGA § 34-9-201 (f) clearly provides that Brasher was entitled to select his treating physician, the ALJ erred when it sua sponte appointed Dr. Dorchak as Brasher's treating physician.

2. Brasher also contends that the Board erred in affirming the ALJ's finding that the light-duty job was suitable to his capacity and that Brasher was not justified in refusing it pursuant to OCGA § 34-9-240. We disagree.

> The test of OCGA § 34-9-240 is two-pronged. The [B]oard must first determine whether the employment offered by the employer and refused by the employee is suitable to the capacity of the employee. If the [B]oard finds that the proffered employment is suitable within the meaning of the statute, the employee is not entitled to compensation during the continuance of his refusal to work unless in the opinion of the [B]oard such refusal was justified.

(Citation omitted.) *Martines v. Worley & Sons Constr.*, 278 Ga. App. 26, 28 (628 SE2d 113) (2006). "Suitable to his capacity" refers to the employee's capacity or ability to perform the work within his physical limitations or restrictions. *City of Adel, v. Wise,* 261 Ga. 53, 55 (401 SE2d 522) (1991).

(a) Contrary to Brahser's arguments, the evidence supports the Board's findings that the light-duty job offered to Brasher was appropriate and remains appropriate for his limitations. The light-duty job offered to Brasher involved working in the terminal guard shack and checking that US Express's drivers were wearing their seatbelts. The evidence shows that US Express offered that position in compliance with the limitations noted by Brasher's medical providers because it did not involve any lifting, prolonged standing or walking, pushing or pulling, reaching

9

above shoulders, or squatting or kneeling. Consequently, the evidence supports the Board's determination that the light-duty position was suitable to his capacity.

(b) Brasher further argues that he was justified in refusing the light-duty job offered to him because the position required relocation and because he had no money to buy food to take with the medications he was prescribed for his injury, and the Board erred in finding him not credible as to this issue. We disagree.

For a refusal to be justified, it "must relate to the physical capacity of the employee to perform the job; the employee's ability or skill to perform the job; or factors such as geographic relocation or travel conditions which would disrupt the employee's life." (Punctuation omitted.) *City of Adel*, supra, 261 Ga. at 56. It is axiomatic that the weight and credibility of a party's testimony is determined solely by the ALJ and the Board. *Young v. Columbus Consolidated Govt.*, 263 Ga. 172, 173 (1) (430 SE2d 7) (1993).

Although Brasher contends that he was justified in refusing to continue the position because he did not have enough money to buy food to take with his medication, the ALJ found Brasher's testimony on this issue to be not credible. Despite Brasher's claim that he would "starve to death" if he did not quit the light-duty position, the evidence shows that US Express provided Brasher with a hotel that

10

included breakfast, and that Brasher's supervisor also offered to buy him lunch for four days. Further, Brasher testified that he was frustrated with the light-duty position because his injury prevented him from sitting for eight hours a day and he wanted to stand and move around. The evidence shows, however, that Brasher was told that he could stand and move around in the guard shack.

Additionally, while Brasher argues that the relocation disrupted his life based on evidence that the bus ride from his home in Alabama to Tunnel Hill took 15 hours, he testified that the bus got stuck in Atlanta and did not depart for several hours. Furthermore, Brasher's own testimony established that, prior to his injury, he was a long-haul truck driver, which required him to travel across the country. Therefore, Brasher was accustomed to long periods away from home. Based on these record facts, the ALJ was authorized to conclude that Brasher's reasons for quitting were not credible and that his refusal to work was not justified.

3. Brasher contends that the Board erred in affirming the ALJ's failure to order payment of additional TTD benefits based on an urgent care medical report dated July 11, 2012 that indicated "no activity." We disagree.

"In all claims for compensation, it is necessary for the claimant to carry the burden of proof in order to establish [his] claim for compensation." (Citation

omitted.) *Scandrett v. Talmadge Farms, Inc.*, 174 Ga. App. 547, 548 (1) (330 SE2d 772) (1985). As noted by the ALJ, the phrase "no activity," without any specific reference to Brasher's ability to work, is ambiguous, as it could be referring to Brasher being physically inactive or in an inactive status with respect to current treatment at the urgent care facility. The urgent care report prior to the July visit at issue listed specific restrictions, including no pushing or pulling of any weight; no reaching above shoulders, no squatting or kneeling, and limited arm use. Morever, following a September 4, 2012 examination, Dr. Dorchak released Brasher to sedentary duty. Therefore, the evidence supported the ALJ's determination that Brasher failed to carry his burden of proof in order to establish his claim of compensation based on the July 12, 2012 urgent care report.

Consequently, since the light-duty position remained available to Brasher, the ALJ was authorized to conclude that Brasher had established that he was entitled to benefits only for the period from March 21, 2012, the date of his first urgent care visit, through April 5, 2012, the day before he started his light-duty job, and that he was not entitled to any additional benefits.

4. Brasher next argues that the Board abused its discretion by failing to award a 15 percent penalty on unpaid TTD benefits. US Express concedes, and we conclude,

12

that Brasher was entitled to a 15 percent penalty under OCGA § 34-9-221 (e), because the employer did not pay the benefits when due. US Express nevertheless argues that the issue is moot because it has already paid Brasher the full income benefits from March 21, 2012 through April 5, 2012, plus a 15 percent penalty. Evidence of these payments, however, is not in the record on appeal. It is well-established that "[a]llegations of facts appearing only in the briefs and unsupported by evidence in the record will not be considered on appellate review." (Footnote omitted.) *Abdelaal v. Greens of Windy Hill*, 285 Ga. App. 367, 369 (646 SE2d 474) (2007). Consequently, Brasher is entitled to a 15 percent penalty.

5. In his final enumeration, Brasher contends that the Board's erroneous application of workers' compensation law deprived him of his due process and equal protection rights. We disagree.

Brasher does not specify how his due process rights were violated. Rather, his argument appears to be based on the outcome of his case. "The constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard." (Citation omitted.) *Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (2) (518 SE2d 126) (1999). There is no dispute that Brasher had notice and a full hearing on his claims, where he had the opportunity to present his own evidence

13

and cross-examine his employer's witness. Consequently, Brasher's due process rights were not violated.

With respect to Brasher's equal protection claim, arguments relating to alleged unfair disparity in workers' compensation cases are matters to be addressed by the General Assembly and not to the judiciary. *Ga. Self-Insurers Guar. Trust Fund v. Thomas,* 269 Ga. 560, 562 (501 SE2d 818) (1998).

In conclusion, we reverse the Board's order to the extent it appointed Dr. Dorchak as Brasher's treating physician, rather than allowing Brasher to select his own physician, and failed to assess a 15 percent penalty on US Express for not paying benefits when due. We affirm the Board's order to the extent it concluded that Brasher was only entitled to benefits from March 21, 2012 to April 5, 2012 because the evidence supported its findings that the light-duty job offered to Brasher was suitable and that his refusal of that job was unjustified. We also reject Brasher's claim that his due process or equal protection rights were violated.

*Judgment affirmed in part, reversed in part. Doyle, P. J., and Dillard, J., concur.*